IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RASHAWNA R. JONES,<br><br>    Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>    Defendant. | CASE NO. 1:25-cv-515<br><br>DISTRICT JUDGE<br>DONALD J. NUGENT<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

Plaintiff Rashawna R. Jones filed a Complaint against the Commissioner of Social Security seeking judicial review of a decision denying her application for supplemental security income and disability insurance benefits. Doc. 1. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural Background**

*Previous application.* In August 2017, Jones filed applications for disability insurance benefits and supplemental security income, alleging a

disability onset date in December 2009.[1] Tr. 74. In March 2019, after conducting a hearing at which Jones, represented by counsel, and a vocational expert testified, Administrative Law Judge (ALJ) Catherine Ma issued a written decision finding that Jones was not disabled. *See* Tr. 91. In April 2020, the Appeals Council affirmed the ALJ's March 2019 decision. Tr. 97. Because Jones did not further appeal, the ALJ's March 2019 decision became the final decision of the Commissioner as to her August 2017 application.

*Current application.* In June 2022, Jones filed an application for supplemental security income, Tr. 191, and in October 2023, she filed an application for disability insurance benefits, Tr. 217. The amended onset date for both applications is in January 2022. *See* Tr. 52. In pertinent part, Jones alleged that she was disabled and limited in her ability work, due to: bipolar disorder, depression, anxiety, back injury, L3, L4, and L5 herniated discs,[2]

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

[2] Vertebrae in a person's spine are given letter and number designations according to their location. The neck—the cervical spine—has seven vertebrae designated as C1 through C7. *See* Thomas Scioscia, MD, Vertebrae in the Vertebral Column, Spine-health Resources, https://www.spine-health.com/conditions/spine-anatomy/vertebrae-vertebral-column [https://perma.cc/R9MM-TBZT]. The twelve vertebrae compromising the upper spine—the thoracic spine—are labeled at T1 through T12. *Id*. The five vertebrae in the lower spine—the lumbar spine—are L1 through L5. *Id*. The five vertebrae at the bottom of the spine—in the sacrum—are labeled as S1 through S5. Thomas Scioscia, MD, Sacrum (Sacral Region), Spine-health Resources, https://www.spine-health.com/conditions/spine-anatomy/sacrum-sacral-region [https://perma.cc/S2BR-RBTB].

2

osteoarthritis, and sciatic nerve damage. Tr. 223. The Commissioner denied Jones's applications initially and on reconsideration. *See* Tr. 133, 138.

In June 2023, Jones requested a hearing. Tr. 142. In October 2023, ALJ Eric Westley held a telephonic hearing. Tr. 45. Jones appeared, testified, and was represented by counsel at the hearing. Tr. 52. Qualified vocational expect Lauren Petkoff also testified. Tr. 67. In January 2024, ALJ Westley issued a written decision, in which he found that Jones was not entitled to benefits. Tr. 40.

In February 2024, Jones appealed the ALJ's decision to the Appeals Council. Tr. 188. In January 2025, the Appeals Council denied Jones's appeal making the ALJ's January 2024 decision the final decision of the Commissioner. *See* Tr. 7.

Jones timely filed this action in March 2025. Doc. 1. In it, she asserts three issues:

1. The ALJ committed harmful error when he applied the wrong standard of review when he adopted the tenor of the residual functional capacity set forth by the prior Administrative Law Judge.

2. The ALJ erred when he failed to support his conclusions or discuss supportability and consistency when he evaluated the opinion of the treating source.

3. At Steps Four and Five of the Sequential Evaluation, the ALJ's RFC finding that Plaintiff could perform work at the medium level of exertion was not supported by substantial evidence.

3

Doc. 7, at 1.

**Evidence**[3]

*Medical Evidence*

In April 2022, Jones underwent an MRI of her lumbar spine. Tr. 404. The MRI indicated canal stenosis[4] and bilateral foraminal encroachment secondary to bilateral foraminal disc herniation at L3 and L4, bilateral foraminal and nerve root encroachment secondary to broad disc herniation at L4, and right foraminal and nerve encroachment secondary to central and right foraminal disc herniation at L5 and S1. *Id.*

In July 2022, Rachael McLaughlin, APN,[5] conducted a follow-up psychiatric and medication management session with Jones, during which Jones reported that she felt depressed, anxious, and irritated. Tr. 292–93.

---

[3]    The recitation of evidence is not intended to be exhaustive and is generally limited to the evidence cited in the *facts* portions of the parties' briefs.

[4]    Spinal canal stenosis happens when the space around the spinal canal becomes too narrow, which irritates the spinal cord or the nerves that branch from it. *Spinal Stenosis*, Cleveland Clinic Health Library, https://my.clevelandclinic.org/health/diseases/17499-spinal-stenosis [https://perma.cc/NT9S-SZL3].

[5]    APN or APRN is an abbreviation for Advanced Practice Registered Nurse. *Advanced Practice Registered Nurse (APRN)*, OhioAPRN.com, http://www.ohioaprn.com/what-is-an-aprn-.html    [https://perma.cc/69UR-XX65].

In August 2022, Joe Tataro, D.C.,[6] re-examined Jones for a muscle strain in her neck and lower back, which occurred in January 2022. Tr. 314. Dr. Tataro noted that Jones described her treatment as beneficial, but that she continued to experience pain. *Id.*

In August 2022, Koralys Carrucini, LSW,[7] conducted a counseling session during which Jones reported that she had previously attended counseling but stopped due to problems with attendance. Tr. 289. Jones reported that she felt depressed, which was exacerbated by her physical health concerns, and requested bi-weekly counseling sessions. Tr. 289–90.

In October 2022, Jones presented to the emergency room due to flank pain. Tr. 336. Emergency department staff treated Jones for flank pain and muscle strain. Tr. 336. She received pain medication and was directed to follow up with internal medicine. *See* Tr. 336, 369.

In December 2022, Jones underwent an x-ray of her lumbar spine, which revealed mild arthritis and a normal alignment. Tr. 383.

In April 2023, during a follow-up counselling session, Social Worker Carrucini noted that Jones described recent altercations with her sons and that she was taken to jail twice. Tr. 407. Jones also reported recent grief following the passing of two family members and that she felt hopeless, irritable, angry, and a lack of motivation. Tr. 407–10.

---

[6]     The abbreviation "D.C." stands for Doctor of Chiropractic.

[7]     The abbreviation "LSW" stands for Licensed Social Worker.

In June 2023, Melinda Lawrence, M.D., diagnosed Jones with greater trochanteric bursitis of left hip and lumbar spondylosis[8] and administered an injection. Tr. 521. Dr. Lawrence noted that Jones's 2022 spinal MRI showed some progressive narrowing of her spine compared to an MRI performed in 2018. *Id*.

In July and August 2023, Jones continued chiropractic treatment and though she reported stiffness with the symptoms greater on her right side with the pain affecting her sleep, she later reported "her neck feels less restricted and sore." Tr. 511, 512.

*Consultative Examiner*

In December 2022, Dr. Dorothy Bradford performed a consultative examination. Tr. 385–393. Dr. Bradford assessed that Jones has mild degenerative joint disease of the lumbar spine without radiculopathy with comorbid conditions of hypertension and depression, and that "[t]here are no activity restrictions." Tr. 393.

*State Agency Reviewers*

In October 2022, state agency psychological reviewer, Karla Delcour, Ph.D., opined that Jones could understand, remember, and carry out simple one- to two-step instructions in a structured and predictable setting. Tr. 111–

---

[8]     Spondylolysis is the medical term for a small crack or break between two vertebrae in the spine. It most commonly impacts the lower, or lumbar, spinal region. *Spondylolysis*, Cleveland Clinic Health Library, https://my.clevelandclinic.org/health/diseases/10303-spondylolysis [**https://perma.cc/DW7M-JUUY**].

112. In May 2023, on reconsideration, Robert Baker, Ph.D., generally affirmed the earlier psychological limitations, but found that Jones capable of one- to three-step tasks. Tr. 123–24.

In January 2023, state agency reviewer, Dr. Steve McKee, opined that Jones was limited to the medium level of exertion with additional limitations. Tr. 109–111. In May 2023, on reconsideration, Venkatachala Sreenivas, M.D., generally affirmed Dr. McKee's findings. Tr. 121–22.

*Opinion Evidence*

In June 2023, Nurse McLaughlin completed a Mental Residual Capacity Assessment. Tr. 429–431. Nurse McLaughlin noted that Jones attributes her mental health symptoms "to her chronic pain, intermittent pain exacerbation, and financial distress." Tr. 431.

*Function Report*

In September 2022, Jones completed a function report in which she reported the following conditions: bipolar depression, anxiety disorder, "exacerbated chronic back/lower lumbar pain," and sciatic nerve and lower lumbar damage. Tr. 233. Jones described that, when she was not working part-time, she spent the majority of her day in bed. Tr. 235. With regard to her ability to take care of personal needs or medication, Jones reported she needed reminders on her phone or from her sons. Tr. 236.

*Hearing Testimony*

Jones testified that she initially applied for disability in 2017, when she lost part of her finger and was unable to work as she could no longer type at a certain speed. Tr. 55–56. Jones explained that since then, her condition worsened and she was no longer comfortable trying to do anything at the level of what she was used to doing. Tr. 57. Jones described a fall in January 2022, which "made everything worse" and that she has been to physical therapy since that fall. *Id.*

Jones explained that she worked a split shift, meaning part-time in the morning and part-time in the afternoon, and in between these shifts she was "basically glued to [her] TENS unit" to help with her lower back, shoulder, and neck pain. Tr. 58. She also stated that she was reinjured in July, so she returned to therapy to concentrate on her neck, and that her treatment generally consisted of "pain meds, pain management, [and] physical therapy." *Id.*

Jones testified that she could stand for 10 minutes and sit for up to two hours while driving for work, after which she would have a break from work and went home "to recharge" and "get on my TENS unit and, you know, then go back for the afternoon[.]" Tr. 60. She also stated that, while she tried "not to lift too much of anything," she could lift about 10 to 15 pounds. Tr. 61. Jones estimated that she called off work once or twice a week because of her pain and that her worst pain was in her hip and back. Tr. 63–64.

8

*Vocational Expert*

Qualified vocational expert, Lauren Petkoff, testified during the hearing. In response to the ALJ's first hypothetical involving a person with a residual functional capacity ("RFC")[9] to perform work at the medium level of exertion with additional limitations, Petkoff testified that the hypothetical individual could not perform Jones's past work, but could perform jobs such as hospital food service worker, linen room attendant, or rug inspector helper. Tr. 68. Petkoff further opined that if the hypothetical individual were limited to work at the light level of exertion, she could perform jobs as a marker, inspector and hand packager, or router Tr. 69. She further opined that if the hypothetical individual were off task 20% of the time or absent twice a month, then work would be precluded. Tr. 69–70.

**ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2021.

2. The claimant has not engaged in substantial gainful activity since November 16, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

---

[9] An RFC is an "assessment of" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Circ. 2002). Essentially, it is the Social Security Administration's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

3.    Since the alleged onset date of disability, November 16, 2018, the claimant has had the following severe impairments: degenerative disc disease, neurocognitive disorder, diabetes mellitus, obesity, chronic ischemic heart disease, osteoarthritis and allied disorders, and stroke (20 CFR 404.1520(c) and 416.920(c)).

4.    Since November 16, 2018, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that since November 16, 2018, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant could stand or walk for 4 hours in an 8-hour workday. He could occasionally climb ramps or stairs. He could never climb ladders, ropes, or scaffolds. He could frequently balance. He could occasionally stoop, kneel, crouch, or crawl. He could perform occasional bilateral overhead reaching. He would be limited to no exposure to unprotected heights or commercial driving. He would be limited to perform simple, routine tasks, but not at a production rate pace; and limited to occasional routine workplace changes.

6.    The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7.    Prior to the established disability onset date, the claimant was an individual closely

approaching advanced age. On March 14.2024, the claimant's age category changed to an individual of advanced age (20 CFR 404.1563 and 416.963).

8.     The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not an issue in this case because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10.    Prior to March 14, 2024, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.    Beginning on March 14, 2024, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12.    The claimant was not disabled prior to March 14, 2024, but became disabled on that date and has continued to be disabled through the date of this decision. His disability is expected to last twelve months past the onset date (20 CFR 404.1520(g) and 416.920(g)).

13.    The claimant was not under a disability within the meaning of the Social Security Act at any time through June 30, 2021, the date

last insured (20 CFR 404.315(a) and 404.320(b)).

Tr. 1003–1014.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1.  Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2.  Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3.  Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4.  What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

> 5.    Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of Review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable

13

mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

> 1. *The ALJ effectively applied the current* Earley *standard for subsequent applications based on a new period of time.*

Jones first asserts that the ALJ erred by adopting ALJ Ma's RFC while also finding that there was new and material evidence. *See* Doc. 7, at 8 (citing Tr. 24). Specifically, she asserts that "[a]dopting the tenor of [the prior] RFC finding that [she] could perform work at the medium level of exertion was an

14

incorrect application of res judicata as set forth by the Sixth Circuit in *Earley*[10]
… wherein it was determine that a new application was entitled to a fresh look
for a new period of alleged disability." Doc. 7, at 9. Though Jones recognizes
that "the ALJ acknowledged a change in [her] condition," she claims that "the
ALJ erroneously adopted the tenor of the RFC which had been adopted in
2019." *Id*. For the following reasons, the ALJ did not err.

In *Drummond v. Comm'r of Soc. Sec.*, the Sixth Circuit held that
previous decisions "clearly demonstrate that the principles of res judicata can
be applied against the Commissioner. When the Commissioner has made a
final decision concerning a claimant's entitlement to benefits, the
Commissioner is bound by this determination absent changed circumstances."
126 F.3d 837, 842 (6th Cir. 1997).

The Social Security Administration adopted this decision as
Acquiescence Ruling 98-4(6), 63 Fed. Reg. 29,771 (June 1, 1998). In this Ruling
the Administration instructed that:

> When adjudicating a subsequent disability claim
> with an unadjudicated period arising under the
> same title of the Act as the prior claim, adjudicators
> *must* adopt such a finding from the final decision by
> an ALJ or the Appeals Council on the prior claim in
> determining whether the claimant is disabled with
> respect to the unadjudicated period unless there is
> new and material evidence relating to such a finding
> or there has been a change in the law, regulations or
> rulings affecting the finding or the method for
> arriving at the finding.

---

[10]    *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018).

*Id.* at 29, 773 (emphasis added).

As it turned out, the Social Security Administration overread *Drummond*. And in *Earley*, the Sixth Circuit corrected that error. The Court in *Earley* explained that "[w]hen an individual seeks disability benefits for a distinct period of time, each application is entitled to review. There is nothing in the relevant statutes to the contrary. And res judicata only 'foreclose[s] successive litigation of the very same claim.'" 893 F.3d at 933 ("a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994."). Rather, under *Earley*, a claimant is entitled to a "fresh review," *id.* at 934, free from the presumption that a previous "RFC remains the correct RFC for" a later claim, *Nadjl v. Comm'r of Soc. Sec.*, No. 21-cv-01578, 2022 WL 2820413, at *9 (N.D. Ohio July 8, 2022), *report and recommendation adopted*, 2022 WL 2818444 (N.D. Ohio July 18, 2022); *see also Anthony L.M. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00525, 2022 WL 10638159, at *3–4 (S.D. Ohio June 27, 2022); *DiLauro v. Comm'r of Soc. Sec.*, No. 19-cv-2691, 2021 WL 1175415, at *3 (N.D. Ohio Mar. 29, 2021); *Ferrell v. Berryhill*, No. 16-cv-0050, 2019 WL 2077501, at *5 (E.D. Tenn. May 10, 2019) ("The point of *Earley*, … is that regardless of her chances of success, an applicant should have the opportunity for a full hearing, *with no presumptions applied*, when the claim covers a new period of time not addressed in the prior hearing") (emphasis added).

The Sixth Circuit also said in *Earley* that "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, *albeit not binding*, consideration in reviewing a second application." 893 F.3d at 933 (emphasis added). An ALJ may "consider a previous ALJ's RFC" determination but "errs … when he considers the previous RFC a mandatory starting point for the analysis." *Gale v. Comm'r of Soc. Sec.*, No. 18-cv-00859, 2019 WL 8016516, at *5 (W.D. Mich. Apr. 17, 2019), *report and recommendation adopted*, 2020 WL 871201 (W.D. Mich. Feb. 21, 2020).

Here, although the ALJ stated that *Drummond* applied, Tr. 24, the ALJ did what *Earley* and its progeny instruct—he took a "fresh look" and considered the entire record including the new evidence. 893 F.3d at 934. The fact that he ultimately reached a similar conclusion as ALJ Ma does not itself demonstrate an error. Indeed, Jones acknowledges that the ALJ did not state he relied on the prior ALJ's determination. *See* Doc. 7, at 11. In fact, the ALJ expressly recognized that he "is not bound to the previous decision." Tr. 24. Jones also notes that the ALJ explained "there was new and material evidence that [her] impairments had changed since the prior determination" and stated that "the RFC was a departure from the prior determination." *Id*. Nevertheless, Jones asserts that "the ALJ essentially adopted the findings of the prior ALJ when he failed to independently formulate an RFC consistent with [her] impairments and symptoms for the new period of disability." Id. at 12. Jones,

17

however, provides no citation to support this claim. Moreover, review of the ALJ's decision belies this claim and shows that Jones is effectively trying to fell a strawman.[11]

While the ALJ recognized that Jones had filed a previous application in 2017, he also specifically recognized that Jones's current case arose out of a new application for a new period of disability and involved new evidence. Tr. 23–24 (explaining that the new evidence "demonstrates additional severe impairments" and that more recent regulations "require[] a different analysis"). He further found that Jones "has submitted new and substantial evidence since the previous decision establishing a change in her condition." *Id*. at 24. And the ALJ's decision demonstrates that he considered the new evidence. *See e.g.*, Tr. 31 (discussing Jones's hip injury and related effects and treatment in 2022); Tr. 31–35 (summarizing physical and psychological treatment records from 2022 and 2023). So, the ALJ's decision demonstrates he did what *Earley* required—he took a  "fresh look" at the Jones's condition and considered the new evidence relevant to this application period.

Jones's first issue is, thus, meritless and provides no basis for remand.

---

[11]    Jones repeatedly asserts that the ALJ applied the wrong standard of review. See Doc. 7, at 8, 12. But a standard of review is what a court performing an appellate function applies when reviewing a subornative adjudicator's decision. *See* Standard of Review, Black's Law Dictionary (12th ed. 2024).

18

2. *The ALJ properly assessed the medical opinions of record on remand.*

For her second issue, Jones argues that ALJ "the ALJ failed to offer any support for []his determination" that she was able to sustain full-time work "and failed to discuss whether this opinion was consistent with the medical evidence in this matter."[12] Doc. 7, at 15.

The Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency; treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §§ 416.920c(a), 416.920c(c)(1)–(5). Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(a). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] … the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." 20 C.F.R. § 416.920c(c)(2). The Commissioner must

---

[12]    To the extent that Jones is attempting to argue that regulations require the ALJ discuss the supportability and consistency of *his own* opinions, see Doc. 7, at 16, she has misread the applicable regulation, *see* 20 C.F.R. § 416.920c(b)(2) (requiring an ALJ consider the supportability and consistency of medical opinion evidence). Instead, for purposes of this Court's review, the ALJ's conclusions need only be supported by substantial evidence. *Biestek*, 587 U.S. at 99.

explain the supportability and consistency factors when discussing a medical opinion. 20 C.F.R. § 416.920c(b)(2). "[A]n ALJ need not," however, "specifically use the terms 'supportability' or 'consistency' in his analysis." *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) (citing cases). The Commissioner is not required to discuss the remaining factors. *Id.* "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

Here, Jones's argument is apparently about the ALJ's consideration of McLaughlin's assessment. Jones spends over two pages citing various medical evidence, Doc. 7, at 13–15, but provides the Court with only two paragraphs of legal argument, *id.* at 15–16. As an initial issue, much of the evidence cited in support of her second issue with respect to McLaughlin's assessment was not provided in the *Facts* section of Jones's brief. *Compare* Doc. 7, at 2–5, *with* Doc. 7, at 14–15. This matters because, as the Court's Initial Order states: "[t]he Court will not consider facts referenced in a party's argument unless those facts have been set out in the *Facts* section of the party's brief." Doc. 4, at 4. Jones's counsel has been repeatedly warned that evidence cited for the first time in a given argument section will not be considered. *See, e.g.*, *Milliron v. Comm'r of Soc. Sec.*, No. 22-cv-1200, 2023 WL 4211041, at *8 n.10 (N.D. Ohio March 20, 2023), *report and recommendation adopted*, 2023 WL 4205214 (N.D.

Ohio June 27, 2023); *Mencke v. Comm'r of Soc. Sec.*, Case No. 21-cv-2298, 2022 WL 2758577, at *1 n.2 (N.D. Ohio July 14, 2022). Without the factual details of McLaughlin's assessment, which are cited first in Jones's argument section, the Court is left with little to consider in regard to Jones's second issue.

Jones's two-paragraph argument also does not show how the ALJ's findings that McLaughlin's opinion was unpersuasive failed to comply with applicable regulations. Jones says that the "ALJ failed to offer any support for this determination [rejecting McLaughlin's opinion] and failed to discuss whether [McLaughlin's] opinion was consistent with the medical evidence in this matter." Doc. 7, at 15. But just because the ALJ did not use the word "consistent" doesn't mean that the ALJ erred, because the ALJ "need not specifically use the terms 'supportability' or 'consistency' in his analysis." *Cormany*, 2022 WL 4115232, at *3 (collecting cases); *see also Kraig v. Kijakazi*, No. 1:21-cv-1253, 2022 WL 4232692, at *9 (N.D. Ohio Sept. 14, 2022) (ALJ's evaluation of opinion evidence read "in the context of the decision as a whole" contained sufficient articulation for discounting the opinion) (collecting cases). Instead, the ALJ was simply required to consider how this opinion compared to the other medical evidence of record. 20 C.F.R. § 416.920c(c)(2). The ALJ did that. *See e.g.*, Tr. 36 (stating that McLaughlin's findings of "marked and extreme limitations are not consistent with or supported by the record and appear to be based on the claimant's subjective complaints" and then proceeding to detail evidence and subjective symptom descriptions that the

ALJ considered). Plus, when the ALJ's decision is viewed as a whole, it is apparent that the ALJ appropriately considered the consistency of McLaughlin's opinion because he looked to the evidence underlying McLaughlin's opinion—i.e. Jones's subjective complaints—and highlighted the inconsistencies between that evidence and the opinion . See Tr. 36–38; *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (reiterating that the ALJ need not repeat findings found elsewhere in the decision because the decision is read as a whole).

Jones also disagrees with the ALJ's finding that McLaughlin's opinion "was an overestimate of [her] functioning[,]"[13] Doc. 7, at 14–15 (citing Tr. 36), and claims that "the ALJ failed to support his erroneous conclusion that [McLaughlin's opinion] was an overestimate[.]" *id.* at 16. She also argues that the "ALJ erred when he failed to consider the combination of [her]] impairments." Doc. 7, at 15. Each of these arguments amounts to a claim that the ALJ's decision is not supported by substantial evidence and appears to be based on Jones's alternative interpretation of the evidence. This argument fails. For starters, to the extent that Jones believes evidence exists to support her alternative interpretation, her belief does not mean that the ALJ failed to consider the entire record or otherwise inadequately evaluated the evidence.

---

[13]    Although the ALJ concluded that McLaughlin's opinion was "an overestimate of [Jones's] functioning," Tr. at 36, it is apparent in context that the ALJ meant that McLaughlin *underestimated* Jones's functioning.  Indeed, Jones's argument appears to be based on the conclusion that the ALJ should have found that Jones was more limited than the ALJ determined.

And the ALJ's decision belies such argument. The ALJ specifically described the aspects of Jones's subjective complaints that showed her ability to prepare meals, pay bills, shop, live with others, handle her own care and care for her pets, and attend doctors' appointments, Tr. 36. After addressing Jones's own statements, the ALJ assessed the limitations that he found were supported. Tr. 36–37. The fact that Jones points to other evidence and believes that the ALJ should have reached a different conclusion does not mean the ALJ failed to consider certain evidence or that the ALJ's conclusion was unsupported. It is entirely possible for the record to support two different, opposite, conclusions. *Jones*, 336 F.3d at 477.

Additionally, to the extent that Jones is claiming that the ALJ didn't consider her impairments, the ALJ expressly stated that he considered the entirety of the record. *See e.g.*, Tr. 30. And Jones offers no evidence to contradict the ALJ's statement or for her assertion that the ALJ failed to consider the combination of her impairments. So, the ALJ's statement that he considered the entirety of the record is presumed accurate. *See NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 163 (2d Cir. 2021); *see also United States v. Chemical Found., Inc.*, 272 U.S. 1, 14–15 (1926) ("The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.").

Jones's second issue does not provide a basis to remand.

23

>   3.  *The ALJ appropriately considered the evidence when assessing
>       the functional limitations to Jones's RFC.*

As her final argument, Jones asserts that, "[b]ased on the combination of [her] problems, as set forth in the preceding Arguments, [she] had limitations which affected her ability to engage in the basic mental demands as set forth in Ruling 83-10 as well as limitations with her ability to stand/walk the requisite 6 hours a day as required for work at the medium level of exertion." Doc. 7, at 18. Specifically, Jones argues that "these limitations precluded" her from working at the medium level of exertion so, she concludes, that the ALJ's determination "was not supported by substantial evidence requiring a reversal or remand." *Id*.

Jones's argument is easily dispatched. The entirety of Jones's third issue comes down to the assertion that evidence supports her assertion that "these limitations"—for which she provides no supporting or descriptive citation—"precluded her from the ability to engage in substantial gainful activity." Doc. 7, at 18 (generally refencing "the preceding Arguments" for support of her alleged great limitations). But Jones's task before this Court is to show that substantial does not support *the ALJ's determination*. Simply, opining that other evidence supports her preferred conclusion does not help Jones achieve that task. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) ("The decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ."). Instead of

24

demonstrating that the ALJ's determination lacked support, Jones asserts without record citation that "the ALJ erroneously did not build an accurate and logical bridge between the evidence documenting [her] disabling problems and the ALJ's decision to deny benefits." Doc. 7, at 18. But, by omitting any record citation to the evidence she believes supports greater limitations, *Jones* failed to "build an accurate and logical bridge" between the evidence and her own argument.

Moreover, as the above Recommendation illustrates, none of Jones's "preceding Arguments" were persuasive or otherwise provided a basis for remand. So Jones's third issue does not provide a basis for remand.

### Conclusion

For the reasons explained above, I recommend that the Court affirm the Commissioner's decision.

Dated: September 23, 2025

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).